# JOHN BADOLATO *v.* CITY OF NEW BRITAIN ET AL.
## (SC 16084)

Borden, Norcott, Katz, Palmer and McDonald, Js.*

Argued May 26—officially released September 28, 1999

*Jason M. Dodge,* with whom were *Seth Feigenbaum* and, on the brief, *Margaret E. Corrigan* and *Douglas L. Drayton,* for the appellant (named defendant).

*Nancy R. Sussman,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant second injury fund).

MCDONALD, J. In this appeal, we must decide whether the compensation review board (board) properly concluded that the defendant second injury fund (fund) was not obligated to reimburse the named defendant, the city of New Britain (city), for payments made to maintain medical benefits and insurance coverage for the plaintiff, John Badolato, on or after July 1, 1995. Specifically, we must determine whether Public Acts 1995, No. 95-277, § 3 (P.A. 95-277), codified at General Statutes § 31-349, extinguished the fund's obligation to reimburse the city as of that date. We conclude that it did and, accordingly, affirm the decision of the board.

The relevant, undisputed facts are as follows. On January 3, 1991, the plaintiff sustained a compensable back injury. In accordance with General Statutes (Rev. to 1991) § 31-284b (a),[1] the plaintiff's employer, the city, continued to maintain the plaintiff's health and life insurance benefits. On January 7, 1993, the city notified the fund that the plaintiff had been incapacitated for 104 weeks and, pursuant to General Statutes §§ 31-284b

[1] General Statutes (Rev. to 1991) § 31-284b (a) provides in relevant part: "In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer . . . who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund . . . shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to [the Workers' Compensation Act] . . . ."

(d)[2] and 31-349,[3] requested reimbursement for health and life insurance premiums paid on behalf of the plaintiff. The fund complied with this request and reimbursed the city for payments made on behalf of the plaintiff between March 10, 1993, and June 30, 1995.

Thereafter, the fund ceased reimbursing the city as of July 1, 1995, the effective date of P.A. 95-277, § 3. The city requested a formal hearing before the workers' compensation commissioner (commissioner). The commissioner held that, effective July 1, 1995, P.A. 95-277, § 3 had repealed General Statutes (Rev. to 1995) § 31-349 (e) and, thus, had eliminated the fund's obligation to reimburse the city for health and life insurance premium payments made on behalf of the plaintiff. The city appealed from the commissioner's decision to the

[2] General Statutes § 31-284b (d) provides: "In any case where compensation payments to an individual for total incapacity under the provisions of section 31-307 continue for more than one hundred four weeks, the cost of accident and health insurance or life insurance coverage after the one-hundred-fourth week shall be paid out of the Second Injury Fund in accordance with the provisions of section 31-349."

[3] Between January, 1991, and July 1, 1995, the effective date of P.A. 95-277, § 3, General Statutes § 31-349 provided in relevant part: "In any case where [workers'] compensation payments to an individual for total incapacity under the provisions of section 31-307 continue for more than one hundred four weeks, the cost of accident and health insurance or life insurance coverage required under section 31-284b shall be paid to the employer as reimbursement out of the Second Injury Fund after the one-hundred-fourth week. As a condition precedent to the liability of the Second Injury Fund, the employer shall, [in advance of] the expiration of the one-hundred-four-week period, notify the custodian of the Second Injury Fund that such payment is required. The employer shall also furnish to [this] custodian all information [that supports] the claim as to liability of the Second Injury Fund and shall make available to the custodian all medical reports as the custodian shall request. The fund's liability for the cost of [this] coverage shall begin sixty days after the date the custodian is so notified. Failure on the part of the employer to comply does not relieve the employer of its obligation to continue furnishing [the cost of accident and health insurance or life insurance coverage] under the provisions of section 31-284b. . . ." General Statutes (Rev. to 1995) § 31-349 (e); accord General Statutes (Rev. to 1993) § 31-349 (e); General Statutes (Rev. to 1991) § 31-349 (b).

board, and the board affirmed the commissioner's decision. The city appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal to this court, the city claims that the board's decision must be reversed because it constitutes an improper retroactive application of P.A. 95-277, § 3. The city argues that both General Statutes § 55-3[4] and the date of injury rule[5] preclude the retroactive application of workers' compensation statutes that affect substantive rights unless there is a clear and unequivocal expression of legislative intent to the contrary. The city claims that P.A. 95-277, § 3 affects substantive rights, in that it shifts the cost of health and life insurance premiums from the fund to the city and its insurers by terminating the procedural mechanism for reimbursement. The city argues that, because new transfers to the fund, on or after July 1, 1995, are prohibited, P.A. 95-277, § 3 must be applied prospectively only. Because the fund already had accepted the city's request for reimbursement and had begun reimbursing the city for the plaintiff's benefits before July 1, 1995, the city claims that P.A. 95-277, § 3 does not apply to this case.

The fund contends, to the contrary, that the board correctly affirmed the commissioner's decision that P.A. 95-277, § 3 relieved the fund of its obligation to

---

[4] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

[5] The date of injury rule is a rule of statutory construction that establishes a presumption that "new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously." *Gil* v. *Courthouse One*, 239 Conn. 676, 685, 687 A.2d 146 (1997).

reimburse the city for the cost of health and life insurance premiums paid on behalf of the plaintiff pursuant to § 31-284b. The fund argues that the repeal of § 31-349 (e) was a procedural amendment and, therefore, the legislation should be applied retroactively. Because P.A. 95-277, § 3 removed the only procedural mechanism for reimbursement for insurance premiums paid pursuant to § 31-284b, the fund claims that the city has no right to reimbursement on or after July 1, 1995. We conclude that the legislature intended P.A. 95-277, § 3 to apply retrospectively and, therefore, we affirm the decision of the board.

Our analysis of P.A. 95-277, § 3 "is governed by well settled principles of statutory construction. We are mindful of the accepted principle that a statute affecting substantive rights is to be applied only prospectively unless the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991); see also General Statutes § 55-3; *Darak* v. *Darak*, 210 Conn. 462, 467–68, 556 A.2d 145 (1989). We are equally mindful, however, of other compelling principles of statutory construction [that] require us to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 302–303, 695 A.2d 1051 (1997).

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. See, e.g., *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). . . . The issue

of retroactive application of a workers' compensation statute is generally governed by the date of injury rule, which functions as a presumption of legislative intent within the workers' compensation context, similar to the general presumption against retroactive application of a statute. *Gil* v. *Courthouse One*, 239 Conn. 676, 686, 687 A.2d 146 (1997). A review of the cases addressing the date of injury rule indicates that, in accordance with the general rules regarding retroactivity, the date of injury rule applies only to those cases in which the legislation has affected a substantive right. See, e.g., *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Kluttz* v. *Howard*, 228 Conn. 401, 404, 636 A.2d 816 (1994); *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 650, 363 A.2d 1085 (1975). By contrast, procedural statutes generally are applied retroactively absent a clear expression of legislative intent to the contrary. *Rice* v. *Vermilyn Brown, Inc.*, [232 Conn. 780, 786 n.12, 657 A.2d 616 (1995)]; see *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991) (we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary); *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council*, 217 Conn. 143, 151, 584 A.2d 1183 (1991); *Mulrooney* v. *Wambolt*, 215 Conn. 211, 216–17, 575 A.2d 996 (1990) ([p]rocedural statutes . . . ordinarily apply retroactively to all actions whether pending or not at the time the statute . . . became effective, in the absence of any expressed intent to the contrary); *Darak* v. *Darak*, [supra, 210 Conn. 467–68]; *Chieppo* v. *Robert E. McMichael, Inc.*, supra, 650 ([t]he method of appeal from the compensation commissioner . . . is not controlled by the statute in effect on the day of the injury). Thus, if a workers' compensation statute is procedural in nature, the date of injury rule and its presumption

against retroactivity are inapplicable." (Citations omitted; internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 316–17, 702 A.2d 1180 (1997).

In *Coley*, we held that § 9 (f) of P.A. 95-277, which "switches the obligation to pay benefits to a claimant during the pendency of an appeal from the fund to an insurer"; id., 317; was procedural. Id., 323. Because the insurer in that case did not meet its burden of rebutting the presumption that the legislation applied retrospectively, we applied it where the injury occurred prior to July 1, 1995. Id. In so holding, we also stated: "The legislative history and circumstances surrounding the adoption of P.A. 95-277, § 9 (f), and of the legislative policy it was designed to implement, clearly demonstrate a legislative intent to apply the public act retroactively. The problems faced by the fund at the time P.A. 95-277, § 9 (f), was adopted were grave. The legislature was faced with a report suggesting that the fund had become a major financial disaster or near-disaster that possibly threatened the future economic health of our state. . . . [T]he future liability of the . . . [f]und approached almost six billion dollars . . . . 38 H.R. Proc., Pt. 16, 1995 Sess., p. 5946, remarks of Representative James O'Rourke. Representative O'Rourke went on to note that transfers into the fund had increased from 425 cases in 1984 to 6755 in 1991, a 630 percent increase. Id., p. 5947. In the face of these sobering facts, the legislature unanimously passed P.A. 95-277 in an attempt to salvage the fund. . . .

"The purpose of P.A. 95-277 was to overhaul the workers' compensation system in Connecticut, and, specifically, to reduce the financial burden on the fund. See, e.g., 38 S. Proc., Pt. 15, 1995 Sess., pp. 5486–93, remarks of Senator John Kissel; 38 H.R. Proc., Pt. 16, 1995 Sess., pp. 5946–47, remarks of Representative O'Rourke. We must construe the legislation in a manner consistent

with that goal. An interpretation of P.A. 95-277, § 9 (f), as having prospective effect only, would seriously undermine the legislature's purpose to reduce the fund's liabilities immediately. To conclude that any case in which the claimant's injury occurred prior to July 1, 1995, is unaffected by P.A. 95-277, § 9 (f), would require interim payments by the fund well into the future and would defeat the legislative purpose of promptly and dramatically reducing the fund's liability." *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 319–20.

Public Act 95-277, § 3 repealed § 31-349 (e), which provided the only procedural mechanism for reimbursing an employer for its employee's health and life insurance coverage payments made pursuant to § 31-284b. Similar to § 9 (f), which we held to be procedural in *Coley*, § 3 of P.A. 95-277 also shifts the burden of payment from the fund to the employer or its insurer. Regardless of whether we characterize P.A. 95-277, § 3 as procedural or substantive, however, there are ample grounds to conclude that the legislature intended P.A. 95-277, § 3 to remove the fund's obligation to reimburse the city on or after July 1, 1995. The same considerations that led us to recognize in *Coley* that the legislature enacted P.A. 95-277 in the face of "sobering facts"; id., 319; and that the fund faced grave problems and had become a threat to "the future economic health of our state"; id.; leads us to conclude in this case also that the legislature intended P.A. 95-277, § 3 to be applied retrospectively.

"[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." (Internal quotation marks omitted.) *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80 (1995). The purpose of P.A. 95-277 was to reduce the financial burden on the fund. Accordingly, we must construe the legislation in a manner consistent with that goal. As with § 9 (f), if we were to interpret § 3 as having prospective

effect only, we would "seriously undermine the legislature's purpose to reduce the fund's liabilities immediately." *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 320. Thus, we conclude that P.A. 95-227, § 3 eliminated the fund's obligation to reimburse the city for the health and life insurance premiums paid on behalf of the plaintiff on or after July 1, 1995.

Moreover, P.A. 95-277, § 3 provides in relevant part that "no injury which occurs on or after July 1, 1995, shall serve as a basis for transfer of a claim to the second injury fund . . . ." Because there are to be no future transfers to the fund on or after July 1, 1995, the repeal of § 31-349 (e) would serve no purpose unless it were applied to injuries that occurred *prior to* July 1, 1995. As we stated in *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 282, in holding that § 4 (a) of P.A. 95-277[6] applies retrospectively: "If we were to conclude that the legislature intended § 4 (a) of P.A. 95-277 to apply only prospectively from the effective date of the act, we would render it a legal nullity, since § 3 . . . of the same act effectively terminated the transfer of cases in which the second injury occurred on or after July 1, 1995, the effective date of the act. Such an interpretation would be illogical and would run contrary to the principle that [c]ourts must presume that the [legislature] did not intend to enact useless legislation." (Internal quotation marks omitted.) Id., 303.

The city argues that the repeal of § 31-349 (e) applies only to those claims that had not been transferred to the fund as of July 1, 1995. We disagree. The legislature repealed § 31-349 (e), which, by its terms, pertained only to transferred cases. Without § 31-349 (e), there is no longer any procedure for the city to seek reimbursement from the fund, regardless of whether the claim

---

[6] Public Act 95-277, § 4, which is codified at General Statutes § 31-349c, requires a compensation claim to be reviewed by a panel of three physicians before it is transferred to the fund.

has been transferred. We previously have held that "[p]ayment of an award from a special fund such as the second injury . . . fund . . . should be made only in accordance with express statutory authority . . . ." (Citations omitted; internal quotation marks omitted.) *Civardi* v. *Norwich*, supra, 231 Conn. 294. In repealing the only procedure available for employers to seek reimbursement from the fund for paid health and life insurance premiums, the legislature intended the fund to cease all reimbursement on or after July 1, 1995, regardless of the date of injury or the date the claim originally was transferred to the fund.

Finally, we note that this case does not affect the injured worker's entitlement to the payment of benefits. See *Cece* v. *Felix Industries, Inc.*, 248 Conn. 457, 465, 728 A.2d 505 (1999) ("[i]t is of paramount significance that the transfer process has no effect on the injured worker's entitlement to payment of benefits"). The plaintiff will continue to receive his benefits; the legislation merely shifts the burden of payment from the fund back to the city and its insurer. In the event that an employer or its insurer fails or is unable to pay an injured worker's benefits, such compensation shall be paid from the fund pursuant to General Statutes § 31-355.[7]

We conclude that the board properly concluded that the fund was not obligated to reimburse the city for the payment of the plaintiff's health and life insurance premiums on or after July 1, 1995.

The decision of the board is affirmed.

In this opinion the other justices concurred.

---

[7] General Statutes § 31-355 (b) provides in relevant part: "When an award of compensation has been made under the provisions of [the Workers' Compensation Act (act)] against an employer who fails or is unable to pay medical and surgical aid or hospital and nursing service required under [the act] or any type of compensation for disability . . . and whose insurer fails or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. . . ."