## VINCENT D'ERAMO *v.* JAMES R. SMITH, CLAIMS COMMISSIONER
### (SC 17112)

Sullivan, C. J., and Norcott, Katz, Zarella and Corradino, Js.

Argued October 22, 2004—officially released May 17, 2005

*Joseph A. Kubic*, with whom, on the brief, were *James R. Winkel* and *Stephen P. Wright*, for the appellant (plaintiff).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The plaintiff, Vincent D'Eramo, appeals from the judgment of the trial court dismissing his application for a writ of mandamus ordering the defendant, James R. Smith, claims commissioner (claims commissioner), to authorize his medical malpractice action against the state pursuant to General Statutes § 4-160 (b).[1] The claims commissioner filed a motion to dismiss, claiming that the trial court lacked jurisdiction over the matter. The trial court dismissed the action, not on jurisdictional grounds, but because § 4-160 (b) did not apply retroactively to the plaintiff's medical malpractice claim and, therefore, the plaintiff had no clear legal right to the relief requested in his application. We conclude that the form of judgment is improper because the trial court had subject matter jurisdiction over the plaintiff's application and, therefore, the matter should not have been dismissed. We agree with the trial court, however, that the plaintiff is not entitled to the relief sought. Accordingly, we

---

[1] General Statutes § 4-160 (b) provides: "In any claim alleging malpractice against the state, a state hospital or a sanitorium or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim."

conclude that judgment should enter for the claims commissioner.

The record reveals the following facts and procedural history. The plaintiff injured his wrist on or about February 3, 1998. Thereafter, he made arrangements for surgery to repair the injury. Prior to the scheduled surgery, the plaintiff was committed to the custody of the department of correction (department). While in the custody of the department, the plaintiff underwent surgery on July 27, 1998. On January 6, 1999, the plaintiff filed with the claims commissioner a notice of claim alleging that the delay by the department in providing adequate medical care to the plaintiff, even though it had been notified of his condition, had resulted in permanent damage to his wrist.

Meanwhile, in 1998, the legislature enacted No. 98-76 of the 1998 Public Acts (P.A. 98-76), now codified in relevant part at § 4-160 (b), which provided that if a claimant alleges malpractice against the state and files a certificate of good faith in accordance with General Statutes § 52-190a,[2] the claims commissioner "shall authorize suit against the state . . . ." Public Act 98-76 took effect on October 1, 1998. In December, 2001, the plaintiff filed with the claims commissioner a certificate of good faith in accordance with § 52-190a. On March 8, 2002, the plaintiff filed with the claims commissioner a motion for authorization to bring an action

---

[2] General Statutes § 52-190a provides in relevant part: "(a) No civil action shall be filed to recover damages resulting from personal injury . . . whether in tort or in contract, in which it is alleged that such injury . . . resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. . . ."

against the state. A hearing on the claim[3] was scheduled for September 16, 2002. Before the scheduled hearing date, the plaintiff commenced the present action seeking a writ of mandamus ordering the claims commissioner to authorize suit against the state and an injunction against the claims commissioner to prevent him from conducting a hearing on the plaintiff's claim until a writ of mandamus had been issued.

The claims commissioner filed a motion to dismiss, claiming, inter alia, that the trial court lacked subject matter jurisdiction over the action under the doctrine of sovereign immunity. Specifically, the claims commissioner argued that he is absolutely immune to suits arising from the exercise of his adjudicative powers. He also argued that he was not required to authorize the plaintiff's medical malpractice action against the state under § 4-160 (b) because the statute does not apply retroactively to the plaintiff's claim. The trial court granted the claims commissioner's motion to dismiss on the ground that § 4-160 (b) is not retroactive and, therefore, that the plaintiff had no clear legal right to the relief requested in his application. See *Stratford* v. *State Board of Mediation & Arbitration*, 239 Conn. 32, 44, 681 A.2d 281 (1996).[4] Thereafter, the plaintiff appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff argues that the trial court improperly concluded that P.A. 98-76 is not retroactive

[3] See General Statutes § 4-141 (" '[c]laim' means a petition for the payment or refund of money by the state or for permission to sue the state").

[4] "It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law." (Internal quotation marks omitted.) *Stratford* v. *State Board of Mediation & Arbitration*, supra, 239 Conn. 44.

because it constituted a substantive rather than a procedural change to the statutory scheme and the legislature did not clearly and unequivocally express an intent that it apply retroactively. We note that the trial court's determination that § 4-160 (b) is not retroactive and, therefore, that the plaintiff had no clear right to the relief sought, concerns the merits of the plaintiff's mandamus action, rather than the trial court's subject matter jurisdiction. Accordingly, we treat the portion of the claims commissioner's motion to dismiss addressing the merits of the action as a motion for summary judgment and treat the trial court's dismissal as the rendering of judgment in favor of the claims commissioner. See *Sullivan* v. *State*, 189 Conn. 550, 552 n.4, 457 A.2d 304 (1983);[5] cf. *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 445 n.5, 844 A.2d 836 (2004).[6]

The claims commissioner argues that the trial court's judgment may be affirmed on the alternate ground that the plaintiff's application should be dismissed because he has not exhausted his remedies before the claims commissioner and because the power to waive the state's immunity to suit is committed solely to the legislature and, through the legislature, to the claims commissioner.[7]

---

[5] "No objection has been raised to the procedure of using a motion to dismiss rather than a motion for summary judgment to obtain a pretrial adjudication of the merits of the special defense of immunity from liability . . . raised by the defendant. . . . We have decided to consider the issues as the parties have presented them to us on their merits." *Sullivan* v. *State*, supra, 189 Conn. 552 n.4.

[6] "In response to the defendants' motion for summary judgment, the plaintiff filed its own motion for summary judgment alleging that it had standing and was aggrieved. The proper procedural vehicle for disputing a party's standing is a motion to dismiss. *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003). Therefore, we treat the parties' cross motions for summary judgment as a motion to dismiss and an objection to the motion to dismiss. We consider the trial court's action as the denial of a motion to dismiss." *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 445 n.5.

[7] The claims commissioner has not renewed in this court his argument to the trial court that he is absolutely immune to suit. Cf. *Bloom* v. *Gershon*, 271 Conn. 96, 856 A.2d 335 (2004) (considering merits of mandamus action

"Ordinarily, we would consider the defendant's alternate grounds for affirmance only after finding merit in [the claim] raised on appeal. [O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 578–79, 833 A.2d 908 (2003). We therefore consider as a threshold issue the claims commissioner's claimed alternate ground for affirmance.

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted.) *Drumm* v. *Brown*, 245 Conn. 657, 676, 716 A.2d 50 (1998). "We have recognized that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate . . . or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." (Citations omitted.) *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993).

In the present case, the claims commissioner argues that the plaintiff's claim is barred by the exhaustion

seeking order directing claims commissioner to authorize apportionment suit against state pursuant to § 4-160 [b]); *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003) (sovereign immunity is not defense in action against state officer for declaratory or injunctive relief when plaintiff claims officer acted in excess of statutory authority); *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 559, 468 A.2d 1230 (1983) ("[a] trial court that has the competency to adjudicate what duties can be compelled by mandamus has subject matter jurisdiction").

doctrine because he failed to proceed with the scheduled September 16, 2002 hearing before the claims commissioner. This argument has two prongs. First, he argues that, if this court determines that § 4-160 (b) applies to the plaintiff's claim, then the plaintiff must exhaust his administrative remedy by proceeding with the hearing before the claims commissioner to determine whether the plaintiff has complied with the statutory procedural requirements. The issue before this court, however, is not whether the plaintiff has complied with the procedural requirements of § 4-160 (b); it is whether § 4-160 (b) applies at all to the plaintiff's medical malpractice claim. The claims commissioner's argument, properly understood, is not grounded in exhaustion principles because it is premised on a preliminary determination by this court that § 4-160 (b) applies retroactively to the plaintiff's claim. In other words, the claims commissioner's argument is not that this court lacks jurisdiction to determine whether § 4-160 (b) applies retroactively; it is that, if this court determines that § 4-160 (b) does apply retroactively, we should not direct a judgment for the plaintiff, but should remand the matter to the claims commissioner for a hearing. Because we conclude that § 4-160 (b) does not apply retroactively, we need not determine whether the plaintiff was required to follow the procedures set forth in § 4-160 (b).

Second, the claims commissioner argues that the plaintiff must exhaust his administrative remedies because the claims commissioner's current position that § 4-160 (b) is not retroactive could be revisited at a hearing on the plaintiff's motion for authorization to bring an action against the state. Although, as we have indicated, we need not decide in this case what, if any, proceedings before the claims commissioner are contemplated by § 4-160 (b), the legislative history of the statute makes clear that the legislature's primary pur-

pose in enacting the statute was to eliminate, for medical malpractice claimants, the delay and inconvenience engendered by the generally applicable procedures for claims against the state pursuant to chapter 53 of the General Statutes. The plaintiff should not have to go through these more onerous procedures in order to determine whether the less onerous procedures are available. To subject the plaintiff unnecessarily to those procedures would be to subject him, immediately and irreparably, to the very harm that the legislature intended to avoid. We conclude, therefore, that the plaintiff's mandamus action is not barred by the exhaustion doctrine.

We also reject the claims commissioner's claim that the trial court lacked jurisdiction over the plaintiff's application because the determination of whether to waive immunity to suit is committed solely to the legislature and, through the legislature, to the claims commissioner. Article eleventh, § 4, of the constitution of Connecticut provides: "Claims against the state shall be resolved in such manner as may be provided by law." This court has held that "[t]he question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination." (Internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987). We also have held that the trial court does not have jurisdiction over an administrative *appeal* from the claims commissioner's discretionary denial of authorization to bring an action against the state because "[t]he commissioner of claims performs a legislative function directly reviewable only by the General Assembly." *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 541, 489 A.2d 363 (1985).

The claims commissioner argues that these authorities establish that the trial court did not have jurisdiction over the plaintiff's application because the claims

commissioner, through the legislature, is vested with the power to determine whether to waive immunity to suit. The flaw in the claims commissioner's argument is that the plaintiff in the present case, unlike in *Circle Lanes of Fairfield, Inc.*, is not attempting to appeal from a decision by the claims commissioner and is not asking the court to substitute its views for the claims commissioner's discretionary legislative determination as to whether sovereign immunity should be waived. Rather, the plaintiff is asking the court to determine whether the legislature, in enacting § 4-160 (b), intended to waive immunity to claims like his that accrued before the effective date of the statute. Statutory interpretation is a quintessentially judicial function and this court has never hesitated to construe a statute to determine whether it constitutes a waiver of sovereign immunity. Indeed, we have construed § 4-160 (b) for that purpose. See *Bloom* v. *Gershon*, 271 Conn. 96, 98, 856 A.2d 335 (2004) (§ 4-160 [b] does not constitute waiver of immunity to apportionment complaint relating to medical malpractice claim). Accordingly, we conclude that the trial court had jurisdiction over the plaintiff's application.

We now turn to the substance of the plaintiff's claim on appeal. As a preliminary matter, we set forth the standard of review. "[T]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83, 856 A.2d 372 (2004).

The plaintiff in the present case does not claim that any material facts are in dispute. The sole issue in dis-

pute is whether, as a matter of law, the plaintiff has a clear right under § 4-160 (b) to obtain from the claims commissioner authorization for his action against the state. This question turns on whether the statute is retroactive. "Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only."[8] (Citation omitted; internal quotation marks omitted.) *Andersen Con-*

---

[8] The plaintiff argues that § 55-3 does not apply to the claims commissioner because neither the claims commissioner nor the state is included in the statutory definition of "person." See General Statutes § 1-1 (k) ("[t]he words 'person' and 'another' may extend and be applied to communities, companies, corporations, public or private, limited liability companies, societies and associations"). Even if we assume that § 55-3 does not apply to the state and its agents and subdivisions, however, the presumption against retroactivity is rooted in common-law notions of fairness that have general application. As we stated in *State* v. *Faraday*, 268 Conn. 174, 196, 842 A.2d 567 (2004), the "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." (Internal quotation marks omitted.) We can perceive no reason that the state should be exempt from these principles. Moreover, even if these principles do not apply to the state, they apply to claimants against the state, such as the plaintiff. If § 4-160 (b) is a substantive statute, it affects the substantive rights of both the state and claimants against it. Accordingly, we reject this claim.

*sulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001); see also *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 859 n.6, 670 A.2d 1271 (1996) (" '[i]t is a rule of construction that legislation is to be applied prospectively unless the legislature clearly expresses an intention to the contrary' "). "The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . . In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. . . . Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact." (Citations omitted.) *Moore* v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986). "[A]lthough we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application." (Citation omitted; internal quotation marks omitted.) *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991). "While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *Davis* v. *Forman School*, 54 Conn. App. 841, 854–55, 738 A.2d 697 (1999).

We begin our analysis with the language of the statute. Section 4-160 (b) provides in relevant part that an "attorney or party filing [a malpractice] claim may submit a certificate of good faith to the Claims Commis-

sioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim." Before § 4-160 (b) was enacted, medical malpractice claims were treated like other claims against the state under chapter 53 of the General Statutes. With respect to such claims, the claims commissioner had the authority to hold trial-like hearings; see General Statutes § 4-151; to make findings of fact and issue appropriate orders; see General Statutes § 4-154; to approve immediate payment of just claims not exceeding $7500; see General Statutes § 4-158; and to recommend that the General Assembly pay claims exceeding $7500. See General Statutes § 4-159. In addition, "[w]hen the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). Thus, the effect of § 4-160 (b) was to deprive the claims commissioner of his broad *discretionary* decision-making power to authorize suit against the state in cases where a claimant has brought a medical malpractice claim and filed a certificate of good faith. Instead, § 4-160 (b) *requires* the claims commissioner to authorize suit in all such cases.[9] In other words, the effect of the statute was to convert a limited waiver of sovereign immunity to medical malpractice claims, subject to the discretion of the claims commissioner, to a more expansive waiver subject only to the claimant's compliance with certain procedural requirements.

With this background in mind, we conclude that the enactment of P.A. 98-76, now codified at § 4-160 (b),

---

[9] As we have indicated, we express no opinion in this case concerning whether the claims commissioner is authorized under § 4-160 (b) to conduct a hearing to determine whether a claimant has met the statutory requirements.

constituted a substantive change to the statutory scheme. This court previously has recognized that "[w]here a statute gives a right of action which did not exist at common law . . . and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone. . . . The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite . . . ." (Citation omitted; internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 23, 848 A.2d 418 (2004). Similarly, where a statute creates a right to bring an action against the state that did not exist at common law, and places limitations on the right, any such limitations are substantive and not merely remedial or procedural. It follows, therefore, that the amendment of a statutory limitation on a right to sue the state constitutes a substantive change to the statute. Accordingly, § 4-160 (b) constitutes a substantive change to the statutory scheme and, in the absence of any clear expression of legislative intent to the contrary, is presumptively prospective.

The plaintiff argues that the following legislative history contains such a clear and unequivocal expression of legislative intent to the contrary. See *Taylor* v. *Kirschner*, 243 Conn. 250, 252–53, 702 A.2d 138 (1997) (considering legislative history in determining whether substantive statute is retroactive). During debate before the judiciary committee on the bill that ultimately was enacted as P.A. 98-76, Representative Michael Lawlor asked Robert Reardon, an attorney and president of the Connecticut Trial Lawyers Association at the time: "[S]hould this bill become law, what would be the practical effect in a case such as this if these new rules were adopted?" Conn. Joint Standing Committee Hearings,

Judiciary, Pt. 1, 1998 Sess., p. 140. Reardon responded: "I would think that I would file a [c]ertificate of [g]ood [f]aith promptly and the case would move on." Id. Thereafter, Reardon commented: "We only seek to get to the jury and get an opportunity to have our day in court in these medical negligence cases against the [s]tate and not have to wait . . . ." Id., p. 141. Later, Representative Lawlor stated: "I think it's our obligation in light of the reality of the sovereign immunity of the [s]tate and tribes and federal government, etc., that we have to make it as simple as possible to accomplish justice even when the sovereign is involved.

"So, I'm relatively optimistic this bill will be successful this year and hopefully that you won't and people like yourself in the *future* won't have to deal with this kind of thing." (Emphasis added.) Id., p. 147. During the debate on the bill in the House of Representatives, Representative Richard D. Tulisano summarized the changes made by P.A. 98-76 and explained that the bill "reduces [the need for] having another hearing and then bringing it to court for a hearing." 41 H.R. Proc., Pt. 8, 1998 Sess., p. 2697. The plaintiff argues that this history establishes that "the intent of the legislation was to allow the persons who had pending claims at the time of the public hearing to [proceed] to Superior Court upon the filing [of] a certificate of good faith."

We are not persuaded that these general remarks clearly and unequivocally express a legislative intent for the bill to apply retroactively. If anything, Representative Lawlor's statement that *future* claimants would not have to deal with the delays caused by the claims commissioner's investigation expresses the legislature's intent that the legislation would apply prospectively. Accordingly, we conclude that § 4-160 (b) only applies prospectively.

Having concluded that § 4-160 (b) does not apply retroactively, it remains for us to determine whether

application of the statute to the plaintiff's claim would be retroactive. The trial court determined that § 4-160 (b) should apply only to injuries that occurred after the effective date of the statute, October 1, 1998, in a manner similar to the "date of injury rule" that is applied in the workers' compensation context. "The date of injury rule is a rule of statutory construction that establishes a presumption that new workers' compensation legislation affecting rights and obligations as between the parties . . . applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously." (Internal quotation marks omitted.) *Hassell* v. *Lufthansa German Airlines*, 262 Conn. 416, 424, 815 A.2d 94 (2003). The plaintiff argues that the date of injury rule is inapplicable because that rule relies, in part, on § 55-3; see *Badolato* v. *New Britain*, 250 Conn. 753, 756–57, 738 A.2d 618 (1999); and § 55-3 does not apply to the state. We have already rejected this argument. See footnote 8 of this opinion. Accordingly, we conclude that the trial court properly found that the date of injury is the operative date for purposes of retroactivity analysis.

The plaintiff's original injury occurred on or about February 3, 1998, and he received surgery for the injury on July 27, 1998. Accordingly, any injury caused by the department's delay in providing surgery occurred between those dates. Because the plaintiff's injury occurred before the statute's effective date of October 1, 1998, § 4-160 (b) does not apply to his medical malpractice claim. Accordingly, we conclude that the plaintiff had no clear legal right to the relief sought in his application for writ of mandamus and that judgment should enter for the claims commissioner.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment for the defendant on the merits of the plaintiff's application for a writ of mandamus.

In this opinion NORCOTT, KATZ and CORRADINO, Js., concurred.

ZARELLA, J., concurring. I agree with the conclusion of the majority. I write separately, however, because I disagree with the majority that legislative history may be consulted when determining whether a statute that affects the substantive rights of the parties is to be given retrospective effect.

The majority begins its analysis of General Statutes § 4-160 (b) by acknowledging that, "[w]hether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. . . . *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001) . . . ." (Citation omitted; internal quotation marks omitted.) The majority also quotes *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 670 A.2d 1271 (1996), for the proposition that "[i]t is a rule of construction that legislation is to be applied prospectively *unless the legislature clearly expresses an intention to the contrary.*" (Emphasis added; internal quotation marks omitted.) Id., 859 n.6. The majority then examines the language of § 4-160 (b) in the context of the statutory scheme that preceded its enactment and concludes that the statute constituted a substantive change in the law. Accordingly, in the absence of a clear expression of legislative intent to the contrary, the statute is presumptively prospective. I do not take issue with that portion of the majority's analysis.

I strongly disagree, however, with the reasoning that follows. The plaintiff, Vincent D'Eramo, argues that the legislative history of the statute contains a clear and unequivocal expression of the legislature's intent that the statute be given a retrospective effect. Although the majority ultimately rejects this argument, it affirms the legal principle on which the argument is based, namely, that the court may consider legislative history in determining legislative intent. Accordingly, in order to divine the intent of the legislature in the present case, the majority examines remarks made by the legislators at a hearing of the judiciary committee on Public Acts 1998, No. 98-76, and during the subsequent debate on the floor of the House of Representatives. I cannot agree that the legislative history, as expressed in the record of the legislative proceedings, should be consulted in determining whether a statute was intended to be given retroactive effect because such an approach flies in the face of well established legal principles that have guided this court for nearly 200 years.

The notion that a statute is to be construed as having prospective effect unless it contains specific language to the contrary, without reference to the legislative history, is firmly rooted in the common law and was expressed clearly and forcefully in an early opinion of this court. See *Goshen* v. *Stonington,* 4 Conn. 209 (1822). In *Goshen,* Chief Justice Stephen Titus Hosmer declared that, "by construction, if it can be avoided, no statute should have a retrospect, anterior to the time of its commencement . . . . This principle is founded on the supposition, that laws are intended to be prospective only. But *when a statute, either by explicit provision, or necessary implication, is retroactive, there is no room for construction . . . .*" (Citations omitted; emphasis added.) Id., 220. Chief Justice Hosmer also cited English common law for the proposition that "a statute is not to be *construed* as having a

retrospect. . . . Such a construction ought never to be given, *unless the expression of the law imperiously requires it*. The cases of *Helmore* v. [*Shuter*, 89 Eng. Rep. 764, 2 Shower 16 (K.B. 1678)] . . . [and] *Couch* v. *Jeffries*, [98 Eng. Rep. 290, 4 Burrow 2460 (1769)] . . . were determined on this principle."[1] (Citation omitted; emphasis altered.) *Goshen* v. *Stonington*, supra, 223.

Connecticut cases decided after *Goshen* reiterated the principle that the retroactive application of a statute must be expressed in strong and explicit language in the statute itself and cannot be inferred by construction. See, e.g., *Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550, 557 (1829) ("[A]cts of the legislature, although in certain cases an explicit provision may [be retrospective], by construction, can never have given to them a retrospective operation. . . . Where a new rule of law is declared, it never looks backwards, unless it is so enacted in the most unequivocal manner." [Citations omitted.]); *Plumb* v. *Sawyer*, 21 Conn. 351, 355 (1851) ("Although in some cases, statutes may have a retrospective effect, yet such a construction is never to be given to them, unless required in the most explicit terms. The presumption is, that all statutes are to operate prospectively, and were not made to impair vested rights."); *Smith* v. *Lyon*, 44 Conn. 175, 178 (1876) ("One of the firmly established canons for the interpretation of statutes declares that all laws are to commence in the future and operate prospectively, and are to be

---

[1] In *Helmore*, the court stated that it "believed the intention of the makers of [the disputed] statute was only to prevent for the future, and that it was a cautionary law; and if a motion were made in the House of Lords concerning it, they would all explain it so . . . ." *Helmore* v. *Shuter*, supra, 89 Eng. Rep. 765. In *Couch*, the court declared that the statute in question "ha[d] no proviso to save actions already commenced: and therefore it extend[ed] to such actions. The Court will not add such a proviso, when the Legislature [has] omitted it. The words [of the statute] are very strong . . . ." *Couch* v. *Jeffries*, supra, 98 Eng. Rep. 291.

considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions. The rule is one of such obvious convenience and justice as to call for jealous care on the part of the court to protect and preserve it. Retroaction should never be allowed to a statute unless it is required by express command of the legislature or by an unavoidable implication arising from the necessity of adopting such a construction in order to give full effect to all of its provisions."); *Middletown* v. *New York, N. H. & H. R. Co.*, 62 Conn. 492, 497–98, 27 A. 119 (1893) (The court examined the language of a statute within the context of the entire statutory scheme, previous legislation and the purpose of the act and concluded that "a rule of construction firmly imbedded in our law, and whose preservation we consider of the utmost importance . . . is, that all laws should be held to operate prospectively unless their language unmistakably gives them a retrospective operation. . . . There is nothing in the statute [at issue] that hints at the past in express terms, and certainly nothing authorizing us to infer that a retrospective application was intended by the legislature. The presumption is that all statutes are to operate prospectively." [Citations omitted.]).

The legislature later codified the common-law principle that statutes affecting substantive rights are intended to be prospective in their application. General Statutes (1875 Rev.) tit. 22, § 4, p. 551 ("[n]o provision of the General Statutes, not previously contained in the statutes of the State, which impose[s] new obligations on any person or corporation, shall be construed to have a retrospective effect"). The text of that statute survives to this day unchanged. See General Statutes § 55-3.

In the early twentieth century, cases continued to be decided in accordance with the complementary principles that statutes affecting substantive rights are

intended to be prospective only and cannot be retroactively applied except by express provision or necessary implication. See, e.g., *Atwood* v. *Buckingham*, 78 Conn. 423, 426, 62 A. 616 (1905) (considering language of statute within context of broader statutory scheme and observing that "the presumption is that statutes are intended to operate prospectively, and that they should not be construed as having a retrospective effect unless their terms show clearly and unmistakably a legislative intention that they should so operate"); *Massa* v. *Nastri*, 125 Conn. 144, 146–47, 3 A.2d 839 (1939) ("The general rule is that laws are to be interpreted as operating prospectively and considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions. . . . The presumption is that statutes affecting substantive rights are intended to operate prospectively . . . ." [Citation omitted; internal quotation marks omitted.]); *East Village Associates, Inc.* v. *Monroe*, 173 Conn. 328, 332–33, 377 A.2d 1092 (1977) ("Statutes should be construed retrospectively only when the mandate of the legislature is imperative. . . . In the absence of express directions for retroactive application of [the statute] . . . the inference is clear that the [statute] was intended to apply only prospectively." [Citations omitted; internal quotation marks omitted.]); *Hunter* v. *Hunter*, 177 Conn. 327, 332, 416 A.2d 1201 (1979) ("[t]he presumption is that statutes affecting substantive rights are intended to operate prospectively, and to furnish a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions" [internal quotation marks omitted]); *Nagle* v. *Wood*, 178 Conn. 180, 187–88, 423 A.2d 875 (1979) ("There is a general presumption that a statute affecting substantive rights is intended to apply prospectively only. . . . Statutes should be construed retrospectively only when the mandate of the legislature is imper-

ative . . . [and there is] a clear legislative intent . . . ." [Citations omitted; internal quotation marks omitted.]).

In 1984, however, we departed from these long-standing principles of statutory construction and embarked on a different path. In *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 479 A.2d 1191 (1984), we were required to determine whether Public Acts 1981, No. 81-367 (P.A. 81-367), which established certain procedures to be followed by out-of-state wholesalers when terminating liquor distributorships, applied to distributorships in existence at the time the act became effective or only to distributorships that came into existence after the effective date of the act. See id., 173. At the outset of our analysis, we noted that no statute affecting substantive rights shall be construed to have a retrospective effect under § 55-3 in the absence of unequivocal language to the contrary. Id., 174. Characterizing this principle as a "rule of presumed legislative intent . . . rather than a rule of law"; id.; we then examined the language of P.A. 81-367, its legislative history and the preexisting statutory scheme, and concluded that the act applied to distributorships existing at the time it became effective. Id., 174–76.

Thereafter, we sometimes considered legislative history, in addition to statutory language, as a reliable indicator of legislative intent. See, e.g., *State* v. *Lizotte*, 200 Conn. 734, 742, 517 A.2d 610 (1986) (neither language nor legislative history supported conclusion that statute was intended to have retroactive effect); *Taylor* v. *Kirschner*, 243 Conn. 250, 253–55, 702 A.2d 138 (1997) (language, legislative history, objective and underlying policy of public act established that legislature intended statute to be applied retrospectively); but see *Darak* v. *Darak*, 210 Conn. 462, 468, 556 A.2d 145 (1989) (no " 'clear and unequivocal' " language in act to support inference in favor of retrospective application); *Miano*

v. *Thorne*, 218 Conn. 170, 180, 588 A.2d 189 (1991) (no " 'clear and unequivocal' " language in statute to rebut presumption that legislature did not intend statute to apply retrospectively). More recently, we have declared that "[w]e generally look to the statutory language *and* the pertinent legislative history to ascertain whether the legislature intended that the [statute] be given retrospective effect." (Emphasis added; internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 702, 817 A.2d 76 (2003); accord *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 820, 786 A.2d 1091 (2002). This expression of governing legal principles not only elevates legislative history to a level of importance seemingly equal to that of the language of the statute itself but also improperly suggests that an examination of legislative history is generally undertaken when conducting such an analysis despite nearly 200 years of case law to the contrary.[2]

---

[2] I also note that several recent cases espousing the principle that the legislative history may be consulted improperly rely on precedent that evolved in an entirely different context. For example, in *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 820, we cited cases in which the issue addressed by the court was whether the statute was intended to serve as clarifying legislation and, therefore, to be viewed as a declaration of the legislature's original intent. See *Andersen Consulting, LLP* v. *Gavin*, supra, 255 Conn. 521–23; *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 692–93, 755 A.2d 850 (2000). "[A] statutory amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. . . . To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent." (Citations omitted; internal quotation marks omitted.) *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 289–90, 679 A.2d 925 (1996); see also *Andersen Consulting, LLP* v. *Gavin*, supra, 518; *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 719, 714 A.2d 1209 (1998). The issue of clarification, however, was not raised in *Johnson*. Accordingly, *Johnson* improperly cited cases concerning the issue of clarification in support of the proposition that legislative history may be examined when determining whether a statute that is not alleged to be clarifying legislation was intended to be given retrospective effect.

In my view, the time has come to reverse this recent trend of examining legislative history to determine the intent of the legislature when the substantive rights of the parties are affected. It should be self-evident that, in light of our continued reliance on the principle that no statute affecting substantive rights shall be construed to have a retrospective effect in the absence of an unequivocal expression of legislative intent to the contrary, it is impermissible to construe a statute's terms by seeking guidance from the legislative history. In *Goshen* v. *Stonington,* supra, 4 Conn. 209, Chief Justice Hosmer expressed, in the strongest possible terms, that the court should *avoid* construing a statute as having retrospective application when he referred to English case law providing that "[s]uch a construction ought never to be given, *unless the expression of the law imperiously requires it.*" (Emphasis added.) Id., 223. In other words, a statute may be construed to apply retrospectively when there is no express provision to that effect only if, by necessary or unavoidable implication, such a result is required. See id., 220.

Our case law also militates against the use of legislative history to determine whether a statute is to be given retrospective effect because, historically, there was no written record of public hearings prior to the early 1900s and no record of House of Representatives and Senate debates prior to 1945. Consequently, this court's early expression of the applicable governing principles did not anticipate examination of the legislative history of a statute, as reflected in the legislative proceedings, to determine legislative intent because there was no recorded legislative history to examine.

Finally, it only stands to reason that the retrospective application of a statute should be expressed clearly in the words of the statute itself or the result of necessary or unavoidable implication. As the majority properly notes, "the presumption against retroactive legislation

is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." (Internal quotation marks omitted.) Footnote 8 of the majority opinion, quoting *State* v. *Faraday*, 268 Conn. 174, 196, 842 A.2d 567 (2004).

Accordingly, I would dismiss the plaintiff's argument that the legislative history should guide us in this matter because § 4-160 (b) is presumptively prospective under the long held principles of statutory construction that have informed this court since at least 1822, and there is no reason to construe the statute otherwise in the absence of an express provision or necessary implication to the contrary.