337 Conn. 291 JULY, 2021 291

SANDRA HARVEY, ADMINISTRATRIX (ESTATE
OF ISAIAH BOUCHER) *v.* DEPARTMENT OF
CORRECTION ET AL.
(SC 20325)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff, the administratrix of the estate of the decedent, B, sought to
recover damages from the defendants, the Department of Correction
and the provider of health care for those in the department's custody,
for B's allegedly wrongful death. In July, 2015, the Claims Commissioner
authorized B to bring an action against the defendants for medical
malpractice, but B died without having done so. In September, 2016,
the plaintiff brought the present action against the defendants. The
defendants filed a motion to dismiss, claiming that the action was time
barred by the statute (§ 4-160 (d)) requiring a plaintiff who has been
granted authorization to sue the state by the Claims Commissioner to
bring an action within one year from the date that the authorization
was granted. The plaintiff filed an objection, arguing that the one year
time limitation contained in § 4-160 (d) was inoperative because the
two year time limitation in the wrongful death statute (§ 52-555 (a))
controlled her wrongful death claim on behalf of B's estate. The trial
court granted the motion to dismiss for lack of subject matter jurisdiction
and rendered judgment for the defendants. The plaintiff appealed from
the trial court's judgment to the Appellate Court, which affirmed. The
Appellate Court concluded that the plaintiff was required to comply
with both the one year time limitation contained in § 4-160 (d) and the
two year time limitation contained in § 52-555 (a). More specifically, the
Appellate Court held that, because § 4-160 created a right of action
against the state that did not exist at common law, that statute's one
year time limitation constituted a strict limitation on the waiver of
sovereign immunity. The Appellate Court also rejected the plaintiff's
claim that the two year statute of limitations in § 52-555 (a) superseded or
rendered inoperative the one year limitation on the waiver of sovereign
immunity, reasoning that nothing in the text of § 4-160 (d) excepts
wrongful death actions from the strict, one year time limitation on the
waiver of sovereign immunity. The Appellate Court further held that,
because the Claims Commissioner's authorization to sue had expired
when the plaintiff brought the present action, sovereign immunity barred
her action, and the trial court properly granted the defendants' motion

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Harvey *v.* Dept. of Correction

to dismiss. On the granting of certification, the plaintiff appealed to this court. *Held* that the Appellate Court's reasoning and analysis were sound, and, accordingly, that court properly upheld the trial court's granting of the defendants' motion to dismiss for lack of subject matter jurisdiction; moreover, this court's decision in *Soto* v. *Bushmaster Firearms International, LLC* (331 Conn. 53), which recognized that the two year statute of limitations for wrongful death actions contained in § 52-555 (a) does not supersede a time limitation in a statute that creates a right of action that did not exist at common law, provided additional support for the Appellate Court's holding because § 4-160 created the right to sue the state for medical negligence, subject to authorization by the Claims Commissioner, and the plaintiff was thus required to comply with both the two year statute of limitations of § 52-555 (a) and the one year limitation period set forth in § 4-160 (d).

(*One justice concurring separately*)

Argued May 4—officially released October 9, 2020**

*Procedural History*

Action to recover damages for the wrongful death of the plaintiff's decedent as a result of the defendants' alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Elgo, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *DiPentima, C. J.*, and *Sheldon* and *Prescott, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Mario Cerame*, with whom, on the brief, were *Timothy Brignole* and *David Bush*, for the appellant (plaintiff).

*James M. Belforti*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, for the appellees (defendants).

** October 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Harvey *v.* Dept. of Correction

*Opinion*

McDONALD, J. The nub of the question before us is whether the limitations period for a claim against the state brought by the representative of a decedent is controlled by General Statutes § 52-555 (a)[1] regarding wrongful death claims, General Statutes § 4-160[2] regarding actions authorized by the Claims Commissioner, or both. The plaintiff, Sandra Harvey, administratrix of the estate of Isaiah Boucher, appeals from the judgment of the Appellate Court, which affirmed the trial court's judgment dismissing the action against the defendants, the Department of Correction and the University of Connecticut Health Center Correctional Managed Health Care,[3] for lack of subject matter jurisdiction. The plaintiff argues that the Appellate Court incorrectly concluded that her action was time barred by § 4-160 (d).

---

[1] General Statutes § 52-555 (a) provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of."

[2] General Statutes § 4-160 provides in relevant part: "(a) Whenever the Claims Commissioner deems it just and equitable, the Claims Commissioner may authorize suit against the state on any claim which, in the opinion of the Claims Commissioner, presents an issue of law or fact under which the state, were it a private person, could be liable. . . .

\* \* \*

"(d) No such action shall be brought but within one year from the date such authorization to sue is granted. With respect to any claim presented to the Office of the Claims Commissioner for which authorization to sue is granted, any statute of limitation applicable to such action shall be tolled until the date such authorization to sue is granted. . . ."

Although § 4-160 was the subject of amendments in 2016 and 2019; see Public Acts 2019, No. 19-182, § 4; Public Acts 2016, No. 16-127, § 19; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] For convenience, we hereinafter refer to the defendants, collectively, as the state.

Harvey *v.* Dept. of Correction

She argues that, instead, § 52-555 (a) provides the controlling statute of limitations. We conclude that a plaintiff in the unusual posture of the one here, who brings a wrongful death action against the state after having previously obtained permission to sue for medical negligence from the Claims Commissioner, must comply with both the two year time limitation for a wrongful death action articulated in § 52-555 (a) and the one year time limitation on the Claims Commissioner's authorization to sue articulated in § 4-160 (d). Because the plaintiff only complied with the statute of limitations contained in § 52-555 (a) and not with the limitation period articulated in § 4-160 (d), we affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts, including the dates that are relevant for the limitations periods at issue, and procedural history. In 2011, while incarcerated, Boucher became ill and requested medical treatment from the state. In 2013, he was diagnosed with cancer. He filed a notice of claim with the Claims Commissioner, seeking permission to file a medical malpractice action against the state on the basis of allegations relating to the delay in providing diagnostic testing and treatment. On July 16, 2015, the Claims Commissioner authorized Boucher to sue the state for medical malpractice. On September 26, 2015, Boucher died as a result of his cancer.

On September 29, 2016—approximately fourteen months after authorization was obtained from the Claims Commissioner and 369 days after Boucher's death— the plaintiff, as administratrix of Boucher's estate, brought the present action for wrongful death against the state. The state filed a motion to dismiss, asserting that the action was time barred. The state argued that a plaintiff who has obtained authorization to sue the state from the Claims Commissioner has only one year to do so under § 4-160 (d), and the plaintiff brought the

Harvey *v.* Dept. of Correction

present action more than one year and two months after the Claims Commissioner authorized Boucher's action. The plaintiff filed an objection and memorandum of law in opposition to the motion to dismiss, arguing that the one year time limitation contained in § 4-160 (d) was inoperative because the two year time limitation contained in § 52-555 (a) controlled her wrongful death claim on behalf of Boucher's estate.

The trial court granted the state's motion to dismiss. The court noted that the time limitation period contained in § 4-160 (d) must be narrowly construed and strictly applied because the statute both derogates sovereign immunity and creates a right of action that did not exist at common law. The court concluded that a plaintiff seeking to bring a statutory cause of action against the state must comply with *both* the one year time limitation under § 4-160 (d) *and* the applicable statute of limitations that governs the underlying cause of action. It determined that the "[f]ailure to comply with either [time limitation] deprives the court of subject matter jurisdiction and is grounds for dismissal." Thereafter, the trial court denied the plaintiff's motion for reconsideration and reargument.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. On appeal, she claimed that the trial court improperly granted the state's motion to dismiss because the two year time limitation for a wrongful death action articulated in § 52-555 (a) cannot be limited by § 4-160 (d). The Appellate Court affirmed the judgment of the trial court, concluding that the plaintiff was required to comply with both the one year time limitation contained in § 4-160 (d) and the two year time limitation contained in § 52-555 (a). *Harvey* v. *Dept. of Correction*, 189 Conn. App. 93, 103, 108, 206 A.3d 220 (2019).

The Appellate Court focused on the well established rule that a statute in derogation of sovereign immunity,

Harvey *v.* Dept. of Correction

such as § 4-160 (d), must be strictly and narrowly construed. See id., 100–101. Additionally, the court articulated the principles concerning statutory time limitations. See id., 101–102. Specifically, the Appellate Court explained that a time limitation contained in a statute that creates a right of action that did not exist at common law constitutes a substantive prerequisite to the trial court's subject matter jurisdiction, limiting the defendant's liability. See id., 102. This type of time limitation, the Appellate Court reasoned, is distinguishable from a statute of limitations applicable to a right of action that existed at common law, which is a procedural limitation on the availability of the remedy. See id.

The Appellate Court concluded that, because § 4-160 creates a right of action against the state that did not exist at common law, the one year time limitation contained within it constitutes a strict limitation on the waiver of sovereign immunity. Id., 101–102. The Appellate Court explained that the waiver expired approximately two months before the plaintiff commenced the present action, so the principles of sovereign immunity deprived the trial court of subject matter jurisdiction. See id., 102, 106.

The plaintiff nonetheless argued that the two year statute of limitations contained in § 52-555 (a) "superseded or rendered inoperative" the one year limitation on the waiver of sovereign immunity. Id., 103. The Appellate Court rejected this argument, reasoning that nothing in the text of § 4-160 (d) excepts wrongful death actions from the strict, one year time limitation on the waiver of sovereign immunity. See id.

The Appellate Court also rejected the plaintiff's reliance on *Lagassey* v. *State*, 281 Conn. 1, 5, 914 A.2d 509 (2007), and *Ecker* v. *West Hartford*, 205 Conn. 219, 226, 530 A.2d 1056 (1987). *Harvey* v. *Dept. of Correction*, supra, 189 Conn. App. 103–105. The court distinguished

Harvey *v.* Dept. of Correction

*Lagassey* on the ground that the plaintiff in that case commenced her action within one year of the Claims Commissioner's grant of authorization to sue the state, in compliance with § 4-160 (d). See id., 104. Nothing in the court's holding in *Lagassey*—that the plaintiff's action was time barred because she commenced it outside the two year statute of limitations for wrongful death under § 52-555 (a)—suggested that compliance with § 4-160 (d) was unnecessary. See id., 104–105. The court reasoned that *Ecker* was inapposite because it considered only whether the two year statute of limitations could be waived; it did not consider how § 52-555 (a) impacted the court's jurisdiction over an action that was untimely under other applicable statutes. See id., 105.

The Appellate Court noted that "statutes of limitations generally are wielded by defendants as shields; their purpose is not to provide additional substantive rights to plaintiffs." Id., 106. It concluded that the plaintiff was required to "comply with both § 4-160 (d) and the underlying, applicable statute of limitations in order to timely bring an action against the state." Id. Because the Claims Commissioner's authorization to sue had expired when the plaintiff brought the present action, the Appellate Court held that sovereign immunity barred her action and that the trial court properly granted the state's motion to dismiss. See id.

Thereafter, the plaintiff filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court correctly conclude that the plaintiff's action had to be dismissed pursuant to the sovereign immunity provisions of . . . § 4-160 (d), notwithstanding the time limitations set forth in . . . § 52-555 for bringing a wrongful death action?" *Harvey* v. *Dept. of Correction*, 332 Conn. 905, 208 A.3d 1239 (2019).

Harvey *v.* Dept. of Correction

After reviewing the parties' briefs, the record, and the oral argument, we conclude that the Appellate Court's reasoning and analysis were sound, and its conclusion was correct. Nevertheless, we address two additional points not considered by the Appellate Court that support its conclusion that the plaintiff was required to comply with both §§ 52-555 (a) and 4-160 (d).

First, the state claims that this court recently recognized that the two year statute of limitations for wrongful death actions contained in § 52-555 (a) does not supersede a time limitation in a statute that creates a right of action that did not exist at common law. See *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 102–105, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*, U.S. , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019). We agree that this aspect of *Soto* provides additional support for the Appellate Court's holding in the present case.

In *Soto*, the administrators of the estates of certain children and school employees killed at Sandy Hook Elementary School brought an action against the manufacturers, distributors, and retailers of the semiautomatic rifle that the assailant used to kill the decedents. Id., 64–67. Among other causes of action, the plaintiffs brought claims under § 52-555 (a) for wrongful death. Id., 67. These claims alleged, inter alia, that the defendants' violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., provided the underlying theory of liability.[4] See id. The defendants moved to strike these claims as time barred

[4] CUTPA provided two underlying legal theories of liability. First, the plaintiffs in *Soto* claimed that the defendants' sale of the military grade weapon into the civilian market was a negligent and unfair trade practice. *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 73. Second, the plaintiffs claimed that the defendants marketed and advertised the weapon in an unethical manner. Id. Only the first theory of liability is relevant to the present case.

Harvey *v.* Dept. of Correction

by CUTPA's three year statute of limitations, reasoning that the latest alleged CUTPA violation occurred when the defendant retailers sold the rifle to the assailant's mother in March, 2010, and the plaintiffs commenced their action on December 13, 2014, within two years of the decedents' deaths but more than four years after the retailers sold the rifle. Id., 100–101. The trial court *denied* the defendants' motions to strike in this respect, reasoning that, "when a wrongful death claim is predicated on an underlying theory of liability that is subject to its own statute of limitations, it is the wrongful death statute of limitations that controls." Id., 102.

We reversed this aspect of the judgment, holding that the trial court should have struck as time barred those wrongful death claims that were predicated on unfair trade practice allegations because the plaintiffs failed to comply with both the two year, wrongful death statute of limitations and the three year limitation period contained in CUTPA. See id., 105. We recognized that, "*in the ordinary case*, § 52-555 (a) supplies the controlling statute of limitations regardless of the underlying theory of liability." (Emphasis added.) Id., 102. But we reasoned that, when a statute creates a right of action that did not exist at common law, the time limitation provision contained in that statute limits not only the availability of the remedy, but the existence of the right itself. See id., 103. "For such statutes, we have said that the limitations provision 'embodies an essential element of the cause of action created—a condition attached to the right to sue at all. . . . Failure to [strictly observe the time limitation] results in a failure to show the existence of a good cause of action.' " Id., quoting *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 748–49, 150 A.3d 1109 (2016). We concluded that the time limitation is thus a substantive element of the right of action and must be strictly observed—including when that right of action provides the underlying theory of liability

for a wrongful death claim. See *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 104–105. Accordingly, we held in *Soto* that, because CUTPA created a right of action that did not exist at common law, the plaintiffs were required to comply with both the two year limitation period under the wrongful death statute *and* the three year limitation period under CUTPA. Id., 103, 105.

Here, the state argues that our holding in *Soto* requires the plaintiff to comply with both the two year limitation period for wrongful death under § 52-555 (a) and the one year limitation period for the waiver of sovereign immunity under § 4-160 (d). The plaintiff concedes that her appeal likely fails if we conclude that *Soto* controls. Application of the rule from *Soto* turns on whether the theory of liability underlying the plaintiff's wrongful death claim is a right of action that existed at common law.

The theory of liability underlying the plaintiff's wrongful death claim is medical negligence, which is a cause of action that did exist at common law. See id., 102–103 ("This court applied [the rule in the ordinary case] in *Giambozi* v. *Peters*, 127 Conn. 380, 16 A.2d 833 (1940), overruled in part on other grounds by *Foran* v. *Carangelo*, 153 Conn. 356, 216 A.2d 638 (1996), in which the court held that the statute of limitations of the predecessor wrongful death statute, rather than the limitations provision applicable to medical malpractice claims, governed in a wrongful death action based on malpractice. Id., 385 . . . ." (Citation omitted.)). Common law created the right of action for medical negligence, and statutes, such as General Statutes § 52-584, define the availability of the remedy by imposing a limitation period. When medical negligence provides the theory of liability for a wrongful death claim, the negligence statute of limitations is supplanted by § 52-555 (a), which provides the only applicable limitation

Harvey *v.* Dept. of Correction

period. See, e.g., *Giambozi* v. *Peters*, supra, 385; see also, e.g., *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 723, 725, 557 A.2d 116 (1989) (''[i]t is undisputed'' that limitation period articulated in § 52-555 governs wrongful death action alleging medical malpractice against hospitals, doctor, and anesthesiology practice).

Significant to the present case, however, is the fact that the state has always enjoyed immunity from any action seeking damages for negligence, medical or otherwise. ''The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law.'' (Citation omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 258, 932 A.2d 1053 (2007). Section 4-160 created the right to sue the state for medical negligence, subject to authorization by the Claims Commissioner, so the one year time limitation in § 4-160 (d) is not supplanted by § 52-555 (a). As such, a plaintiff's right to sue the state exists only during the one year period authorized by the Claims Commissioner.

Because the right of action providing the theory of liability that underlies the plaintiff's wrongful death claim could not be maintained against the state at common law, *Soto* further establishes that the plaintiff was required to comply with *both* the two year statute of limitations for wrongful death under § 52-555 (a) *and* the one year limitation period for the Claims Commissioner's authorization to sue the state under § 4-160 (d).

The second point not directly considered by the Appellate Court involves our decision in *Leahy* v. *Cheney*, 90 Conn. 611, 98 A. 132 (1916). On appeal to this court, the plaintiff contends that the reasoning in *Leahy* supports her argument that the two year time limitation for a wrongful death action should control. In that case, the plaintiff, the executrix of an employee,

Harvey *v.* Dept. of Correction

sued the defendants, the executors of the employer, for breach of contract. See id., 612–13. The plaintiff filed her action within the six year limitation period for breach of contract but more than one year after the employee died. See id., 613–14. The defendants argued that the plaintiff's action was time barred because General Statutes (1902 Rev.) § 1128[5] required the plaintiff to bring it within one year of the decedent employee's death. See id., 613.

This court rejected the defendants' argument, reasoning instead that § 1128 "was not intended to shorten the statutory time" for the action to be brought; id.; but, rather, was meant to give the decedent's executor or administrator, at minimum, one "full year in which to take out administration, learn of the existence of the claim, and bring [an action]." Id., 614. We concluded that § 1128 provided the executor or administrator of an estate as much time as remained of the unexpired limitation period at the time of the decedent's death, except that, if the limitation period were to expire within one year of the decedent's death, then it would extend to one year from the date of the decedent's death. See id.

In the present case, the plaintiff characterizes § 1128 as "the then applicable wrongful death statute" and argues that this court's reasoning in *Leahy* supports her argument that the two year limitation period from § 52-555 (a) should supersede the one year limitation period from § 4-160 (d). This argument is unpersuasive for two reasons.

---

[5] As this court explained, General Statutes (1902 Rev.) § 1128 provided that, "where the time limited for the commencement of any personal action, which by law survives to the representatives of a deceased person, shall not have elapsed at the time of his decease, the term of one year from the time of such decease shall be allowed to his executor or administrator to institute a suit therefor, and that in such cases such term shall be excluded from the computation." *Leahy* v. *Cheney*, supra, 90 Conn. 613, citing General Statutes (1902 Rev.) § 1128.

Hereinafter, all references to § 1128 are to the 1902 revision of the statute.

Harvey *v.* Dept. of Correction

First, § 1128 was not the predecessor statute to § 52-555. The legislature renumbered § 1128 as General Statutes § 52-594 and amended § 52-594 in 1982. Both of these substantially similar statutes provide one year from the date of a decedent's death for an administrator or executor to commence an action for which the statute of limitations would expire during that year. See footnote 5 of this opinion. Neither statute creates a cause of action for wrongful death. As such, our analysis in *Leahy* of the purpose of § 1128 is not probative of the statutes at issue in this case.

Second, even if the plaintiff were correct that *Leahy* is applicable to her action, our holding in *Leahy* would fail to save her cause of action from dismissal. Before the Appellate Court, the plaintiff similarly argued that § 52-594 extended the Claims Commissioner's waiver of sovereign immunity. *Harvey* v. *Dept. of Correction*, supra, 189 Conn. App. 106–107. The Appellate Court reasoned that, even if that were true, the plain text of § 52-594 indicates that it would extend the Claims Commissioner's waiver of sovereign immunity by only one year from the date of Boucher's death. See id., 108. The limitation period would have then expired on September 26, 2016. Id. "[U]nder the law of our state, an action is commenced not when the writ is returned but when it is served [on] the defendant." (Footnote omitted; internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 549, 848 A.2d 352 (2004). Here, the plaintiff served the state on September 29, 2016. *Harvey* v. *Dept. of Correction*, supra, 108. We conclude that, even if *Leahy* were applicable, § 52-594 would not save the plaintiff's cause of action.

In sum, having reviewed the briefs of the parties and the record on appeal, we conclude that the issue on which we granted certification was properly resolved in the well reasoned decision of the Appellate Court.

Harvey *v.* Dept. of Correction

Consistent with that conclusion, we further conclude that our decision in *Soto* v. *Bushmaster Firearms International, LLC*, supra, 331 Conn. 53, requires a plaintiff who brings an action for wrongful death to comply with both the two year statute of limitations contained in § 52-555 (a) and the limitation period contained in the statute providing the underlying theory of liability, when that theory did not exist as a right of action at common law. See id., 105. On the basis of the foregoing, we conclude that the Appellate Court properly upheld the trial court's granting of the state's motion to dismiss for lack of subject matter jurisdiction.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

D'AURIA, J., concurring. I agree with and join the majority's opinion resolving the certified issue presented, which asks whether the administratrix of the estate of a decedent who received permission to sue the state for medical malpractice under General Statutes § 4-160 (b), and who dies as a result of that malpractice before filing suit, must comply with the statutes of limitations contained in both § 4-160 (d) and General Statutes § 52-555 to bring suit against the state for wrongful death premised on medical malpractice. Applying our precedents and interpreting the legislature's intent, I agree with the majority that the answer is yes, the administratrix, Sandra Harvey, must comply with both statutes of limitations. Because she did not, sovereign immunity bars her action, and the trial court properly dismissed it for lack of subject matter jurisdiction.

I write separately to draw attention to arguably more fundamental sovereign immunity questions begged in this case, namely, whether, under these circumstances,

337 Conn. 291 JULY, 2021 305

Harvey *v.* Dept. of Correction

the administratrix of the decedent's estate even had
authority to bring a wrongful death claim against the
state under § 4-160 (b). That is, when, after receiving
permission to sue the state for medical malpractice, a
decedent dies as a result of that malpractice before
filing suit, is his estate required to return to the Claims
Commissioner to seek permission to sue for wrongful
death? And, if the administratrix must return to the
Claims Commissioner to seek permission to sue for
wrongful death, does § 4-160 (b) even apply to a wrongful
death claim premised on medical malpractice? Although
the majority does not address these issues, the certified
question, as framed, appears to presume that, if the
administratrix did comply with both statutes of limita-
tions, an action for wrongful death would lie under these
circumstances.[1] In fact, it appears the answer to the
certified question is relevant only if in fact the admin-
istratrix had authority to bring the wrongful death
action. But whether she did is not clear.

The majority states that "[t]he theory of liability under-
lying the plaintiff's wrongful death claim is medical
negligence . . . ." This statement plainly is based on
the plaintiff's allegations that the failure of state agents,
servants, or employees to properly evaluate, diagnose,
and treat the decedent's oropharyngeal cancer caused

[1] The trial court did not decide the issue, either, but did note the possibility
that the Claims Commissioner's grant to the decedent of permission to sue
the state under § 4-160 (b) did not authorize a wrongful death action: "[The
trial court] question[ed] whether the plaintiff's characterization of this law-
suit as a wrongful death action is a proper gloss and/or is properly brought
before this court when the action approved by the [Claims] [C]ommissioner
was a medical malpractice claim. . . . [A] distinctly different claim not
presented to the Claims Commissioner but raised 'as an afterthought' [is]
barred by sovereign immunity." The trial court suggested that, if a wrongful
death claim is a distinctly different claim than a medical malpractice claim,
the administratrix would be required to go back to the Claims Commissioner
to get permission to sue. But, if the wrongful death claim was not distinctly
different because the underlying malpractice was in fact before the Claims
Commissioner, then the court's determination regarding the statute of limita-
tions controlled the outcome of the case.

"the progression of [his] cancer condition [that] eventually led to his death." While he was still alive, the decedent provided a certificate of good faith, and the Claims Commissioner granted permission to sue, "limited to that portion of the claim alleging malpractice . . . ." The decedent died before putting the case into suit, thereby necessitating the appointment of the administratrix.

Whether a wrongful death claim that is based on an "underlying" medical malpractice theory of liability comes within § 4-160 (b), thereby requiring that the Claims Commissioner grant permission to sue, and whether such a claim is encompassed by permission to sue for medical malpractice are, in my view, issues at least as fundamental—and jurisdictional—as the statute of limitations issue that the majority decides. The majority properly does not address these issues because neither the parties nor the Appellate Court addressed them. The legislature, of course, could resolve them, and should, in my view, consider doing so, as neither § 4-160 (b) nor our case law provides significant guidance on how to decide these questions.

Section 4-160 (b) provides that, "[i]n any *claim alleging malpractice* against the state, a state hospital or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Office of the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim." (Emphasis added.) Under § 4-160 (b), if a claimant provides a certificate of good faith, as the decedent did in this case, the Claims Commissioner has no discretion to decline to grant permission to sue. Rather, she must grant permission to sue. See *D'Eramo* v. *Smith*, 273 Conn. 610, 622, 872 A.2d 408 (2005) ("the effect of

the statute was to convert a limited waiver of sovereign immunity to medical malpractice claims, subject to the discretion of the [C]laims [C]ommissioner, to a more expansive waiver subject only to the claimant's compliance with certain procedural requirements''); *Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 504, 167 A.3d 1112 (''a medical malpractice action . . . is subject to § 4-160 (b), which . . . strips the commissioner of [her] discretionary decision-making power to authorize suit for such claims against the state if a certificate of good faith in accordance with [General Statutes] § 52-190a has been submitted''), cert. denied, 327 Conn. 973, 174 A.3d 192 (2017).

The legislative history of this exception to the Claims Commissioner's discretionary authority, passed in 1998, explains that the purpose of § 4-160 (b) was to streamline and to expedite the litigation process, both for the benefit of the injured plaintiff and for reasons of judicial economy. See *D'Eramo* v. *Smith*, supra, 273 Conn. 624 (Testimony before the Judiciary Committee included the following statements: ''I would think that I would file a [c]ertificate of [g]ood [f]aith promptly and the case would move on. . . . We only seek to get to the jury and get an opportunity to have our day in court in these medical negligence cases against the [s]tate and not have to wait . . . . [W]e have to make it as simple as possible to accomplish justice even when the sovereign is involved.'' (Citations omitted; internal quotation marks omitted.)). Section 4-160 (b) only addresses ''any claim alleging malpractice,'' however. This court has not had the opportunity to interpret this phrase. It is not clear whether ''any claim alleging malpractice'' includes a wrongful death claim for which malpractice is the underlying theory of liability. Even if § 4-160 (b) encompasses wrongful death claims premised on medical malpractice, it also is not clear if permission to sue

Harvey *v.* Dept. of Correction

for a common-law medical malpractice claim extends to a wrongful death claim premised on medical malpractice.[2]

Section 4-160 (b) does not provide any clear answers to these questions. I also have found no case law addressing them. In *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 493, however, the Appellate Court addressed whether a medical malpractice claim was encompassed by the Claims Commissioner's permission to sue. See id., 504. In *Arroyo*, the plaintiffs had requested and received permission to sue the state for medical malpractice. See id., 497. On appeal, the defendants argued that the trial court lacked subject matter jurisdiction because the "theory of liability" that the plaintiffs were pursuing in their lawsuit was "materially different" from the claim contained in the request for permission to sue that they had filed with the Claims Commissioner, which was granted pursuant to the mandatory provision of § 4-160 (b).[3] Id., 500. The Appellate

---

[2] Notably, the legislature in 2019 amended § 4-160 (b) to provide in addition: "In lieu of filing a notice of claim pursuant to section 4-147, a claimant may commence a medical malpractice action against the state prior to the expiration of the limitation period set forth in section 4-148 and authorization for such action against the state shall be deemed granted. Any such action shall be limited to medical malpractice claims only and any such action shall be deemed a suit otherwise authorized by law in accordance with subsection (a) of section 4-142." Public Acts 2019, No. 19-182, § 4. This amendment was not intended to—and did not—clarify the issues this concurring opinion identifies. In fact, the amendment sets up the possibly odd scenario in which a plaintiff bypasses the Claims Commissioner and brings an action in court by filing a good faith certificate in support of a medical malpractice action, and, upon the plaintiff's death as an alleged result of that malpractice, the administratrix would have to go the Claims Commissioner for permission to sue.

[3] "Specifically, the defendants argue[d] that in alleging that [the defendant urologist] 'dissected and ligated . . . vascular structures, thereby . . . severing blood flow to [the plaintiff patient's] left testicle,' the 'vascular structure' to which the plaintiffs must have been referring in their notice of claim was the testicular artery because the only 'vascular structure' that could have resulted in a lack of blood flow to the testicle was the testicular artery. The defendants then reasoned that, because the plaintiffs' theory of liability presented at trial was that [the defendant urologist] dissected and ligated a vein, not the testicular artery, and injured the nearby testicular artery in

Harvey *v.* Dept. of Correction

Court disagreed with the defendants, explaining that, although the plaintiffs' theory of the case was more "particularized" at trial than it was in their request for permission to sue, the general theory remained the same. Id., 504–506. The court reasoned that it was only natural for the plaintiffs' theory to become more particularized at trial after the plaintiffs had received the benefit of the discovery process. Id., 506.

The holding in *Arroyo* at least suggests that the plaintiff's request for permission to sue may be more general than the actual claim brought against the state. *Arroyo* also suggests that materially different claims are not authorized under § 4-160 (b). It is not clear, however, whether a wrongful death claim is a more particularized claim of medical malpractice, as was the case in *Arroyo*, which did not involve wrongful death or a materially different claim. But see *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966) (wrongful death claim under § 52-555 is "a continuance of that which the decedent could have asserted had he lived" (internal quotation marks omitted)).

Even if a claim for wrongful death premised on medical malpractice is not a more particularized claim for medical malpractice, it is nonetheless arguable that permission to sue the state for medical malpractice might encompass a wrongful death claim premised on the same malpractice. Under General Statutes § 4-147, regarding claims against the state in general, the Appellate Court has determined that, "[w]hile the plaintiff [is] not required to set forth a formal declaration of the particular causes of action he [seeks] to bring against the state, he need[s] to include information that would

turn by unintentionally cauterizing it, the plaintiffs did not obtain a waiver of sovereign immunity for the claim presented to the court." (Emphasis omitted; footnote omitted.) *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 500.

clarify the nature of the waiver sought and ensure that the Claims Commissioner . . . [has] an understanding of the nature of that waiver.'' *Morneau* v. *State*, 150 Conn. App. 237, 252, 90 A.3d 1003, cert. denied, 312 Conn. 926, 95 A.3d 522 (2014). The Appellate Court has held that a plaintiff may not bring suit on a claim ''not included in the proceedings before the Claims Commissioner'' but is limited to raising the legal theories that were raised before the Claims Commissioner. Id., 251. A claim is sufficiently raised before the Claims Commissioner if the allegations before the Claims Commissioner ''would support the elements of [the] distinct [cause] of action.'' Id. Under this rule, it is possible that notice of a medical malpractice claim may be sufficient to provide notice to the Claims Commissioner of a possible wrongful death claim, should the plaintiff die, if that claim is premised on the same allegations of medical malpractice. It is not clear, however, if this rule applies to subsection (b) of § 4-160.

If the permission to sue granted in this case did not encompass the administratrix' wrongful death claim, she would be required to seek permission to sue anew. This brings us full circle to the question of whether the wrongful death claim is a claim ''alleging malpractice against the state, a state hospital or against a . . . licensed health care provider employed by the state''; General Statutes § 4-160 (b); thereby requiring that the Claims Commissioner grant permission to sue if the administratrix provides a certificate of good faith, or whether wrongful death is something different that instead invokes the Claims Commissioner's discretionary authority. It is perhaps surprising that these issues previously have not arisen, but they are bound to arise at some point—either because, as in this case, the injured party receives permission to sue for medical malpractice but dies before bringing the suit, or because the

Harvey *v.* Dept. of Correction

injured party receives permission to sue and does bring suit for medical malpractice but dies before the case resolves.

At oral argument before this court, the defendants' counsel declined to commit to a position on whether an administratrix would have to return to the Claims Commissioner to seek authorization to sue the state for wrongful death, the original claimant having died after receiving permission to sue for medical malpractice but before putting the case into suit. It is understandable that counsel might want to hold their fire and argue in a future case that, narrowly construed, neither the legislature nor the Claims Commissioner authorized a wrongful death suit under those circumstances.

Because the legislature specifically decided as a matter of policy to permit prompt action on medical malpractice claims by curtailing the Claims Commissioner's discretion when a plaintiff provides a certificate of good faith, I believe the legislature is best suited to clarify whether permission to sue the state for medical malpractice encompasses a claim for wrongful death premised on that medical malpractice. See *Thibodeau* v. *Design Group One Architects*, *LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002) ("[b]ut just as the primary responsibility for formulating public policy resides in the legislature . . . so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals" (citations omitted)). In light of the limited legal guidance available on these issues, legislative guidance would avoid the consumption of judicial and other state resources required to resolve a question that is plainly one of legislative policy. A legislative solution would also avoid uncertainty and delay for litigants awaiting resolution of the estates of those who have passed.