******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., concurring. I agree with and join the majority's opinion resolving the certified issue presented, which asks whether the administratrix of the estate of a decedent who received permission to sue the state for medical malpractice under General Statutes § 4-160 (b), and who dies as a result of that malpractice before filing suit, must comply with the statutes of limitations contained in both § 4-160 (d) and General Statutes § 52-555 to bring suit against the state for wrongful death premised on medical malpractice. Applying our precedents and interpreting the legislature's intent, I agree with the majority that the answer is yes, the administratrix, Sandra Harvey, must comply with both statutes of limitations. Because she did not, sovereign immunity bars her action, and the trial court properly dismissed it for lack of subject matter jurisdiction.

I write separately to draw attention to arguably more fundamental sovereign immunity questions begged in this case, namely, whether, under these circumstances, the administratrix of the decedent's estate even had authority to bring a wrongful death claim against the state under § 4-160 (b). That is, when, after receiving permission to sue the state for medical malpractice, a decedent dies as a result of that malpractice before filing suit, is his estate required to return to the Claims Commissioner to seek permission to sue for wrongful death? And, if the administratrix must return to the Claims Commissioner to seek permission to sue for wrongful death, does § 4-160 (b) even apply to a wrongful death claim premised on medical malpractice? Although the majority does not address these issues, the certified question, as framed, appears to presume that, if the administratrix did comply with both statutes of limitations, an action for wrongful death would lie under these circumstances.[1] In fact, it appears the answer to the certified question is relevant only if in fact the administratrix had authority to bring the wrongful death action. But whether she did is not clear.

The majority states that "[t]he theory of liability underlying the plaintiff's wrongful death claim is medical negligence . . . ." This statement plainly is based on the plaintiff's allegations that the failure of state agents, servants, or employees to properly evaluate, diagnose, and treat the decedent's oropharyngeal cancer caused "the progression of [his] cancer condition [that] eventually led to his death." While he was still alive, the decedent provided a certificate of good faith, and the Claims Commissioner granted permission to sue, "limited to that portion of the claim alleging malpractice . . . ." The decedent died before putting the case into suit, thereby necessitating the appointment of the administratrix.

Whether a wrongful death claim that is based on an "underlying" medical malpractice theory of liability comes within § 4-160 (b), thereby requiring that the Claims Commissioner grant permission to sue, and whether such a claim is encompassed by permission to sue for medical malpractice are, in my view, issues at least as fundamental—and jurisdictional—as the statute of limitations issue that the majority decides. The majority properly does not address these issues because neither the parties nor the Appellate Court addressed them. The legislature, of course, could resolve them, and should, in my view, consider doing so, as neither § 4-160 (b) nor our case law provides significant guidance on how to decide these questions.

Section 4-160 (b) provides that, "[i]n any *claim alleging malpractice* against the state, a state hospital or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Office of the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim." (Emphasis added.) Under § 4-160 (b), if a claimant provides a certificate of good faith, as the decedent did in this case, the Claims Commissioner has no discretion to decline to grant permission to sue. Rather, she must grant permission to sue. See *D'Eramo* v. *Smith*, 273 Conn. 610, 622, 872 A.2d 408 (2005) ("the effect of the statute was to convert a limited waiver of sovereign immunity to medical malpractice claims, subject to the discretion of the [C]laims [C]ommissioner, to a more expansive waiver subject only to the claimant's compliance with certain procedural requirements"); *Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 504, 167 A.3d 1112 ("a medical malpractice action . . . is subject to § 4-160 (b), which . . . strips the commissioner of [her] discretionary decision-making power to authorize suit for such claims against the state if a certificate of good faith in accordance with [General Statutes] § 52-190a has been submitted"), cert. denied, 327 Conn. 973, 174 A.3d 192 (2017).

The legislative history of this exception to the Claims Commissioner's discretionary authority, passed in 1998, explains that the purpose of § 4-160 (b) was to streamline and to expedite the litigation process, both for the benefit of the injured plaintiff and for reasons of judicial economy. See *D'Eramo* v. *Smith*, supra, 273 Conn. 624 (Testimony before the Judiciary Committee included the following statements: "I would think that I would file a [c]ertificate of [g]ood [f]aith promptly and the case would move on. . . . We only seek to get to the jury and get an opportunity to have our day in court in these medical negligence cases against the [s]tate and not have to wait . . . . [W]e have to make it as simple

as possible to accomplish justice even when the sovereign is involved." (Citations omitted; internal quotation marks omitted.)). Section 4-160 (b) only addresses "any claim alleging malpractice," however. This court has not had the opportunity to interpret this phrase. It is not clear whether "any claim alleging malpractice" includes a wrongful death claim for which malpractice is the underlying theory of liability. Even if § 4-160 (b) encompasses wrongful death claims premised on medical malpractice, it also is not clear if permission to sue for a common-law medical malpractice claim extends to a wrongful death claim premised on medical malpractice.[2]

Section 4-160 (b) does not provide any clear answers to these questions. I also have found no case law addressing them. In *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 493, however, the Appellate Court addressed whether a medical malpractice claim was encompassed by the Claims Commissioner's permission to sue. See id., 504. In *Arroyo*, the plaintiffs had requested and received permission to sue the state for medical malpractice. See id., 497. On appeal, the defendants argued that the trial court lacked subject matter jurisdiction because the "theory of liability" that the plaintiffs were pursuing in their lawsuit was "materially different" from the claim contained in the request for permission to sue that they had filed with the Claims Commissioner, which was granted pursuant to the mandatory provision of § 4-160 (b).[3] Id., 500. The Appellate Court disagreed with the defendants, explaining that, although the plaintiffs' theory of the case was more "particularized" at trial than it was in their request for permission to sue, the general theory remained the same. Id., 504–506. The court reasoned that it was only natural for the plaintiffs' theory to become more particularized at trial after the plaintiffs had received the benefit of the discovery process. Id., 506.

The holding in *Arroyo* at least suggests that the plaintiff's request for permission to sue may be more general than the actual claim brought against the state. *Arroyo* also suggests that materially different claims are not authorized under § 4-160 (b). It is not clear, however, whether a wrongful death claim is a more particularized claim of medical malpractice, as was the case in *Arroyo*, which did not involve wrongful death or a materially different claim. But see *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966) (wrongful death claim under § 52-555 is "a continuance of that which the decedent could have asserted had he lived" (internal quotation marks omitted)).

Even if a claim for wrongful death premised on medical malpractice is not a more particularized claim for medical malpractice, it is nonetheless arguable that permission to sue the state for medical malpractice might encompass a wrongful death claim premised on the same malpractice. Under General Statutes § 4-147,

regarding claims against the state in general, the Appellate Court has determined that, "[w]hile the plaintiff [is] not required to set forth a formal declaration of the particular causes of action he [seeks] to bring against the state, he need[s] to include information that would clarify the nature of the waiver sought and ensure that the Claims Commissioner . . . [has] an understanding of the nature of that waiver." *Morneau* v. *State*, 150 Conn. App. 237, 252, 90 A.3d 1003, cert. denied, 312 Conn. 926, 95 A.3d 522 (2014). The Appellate Court has held that a plaintiff may not bring suit on a claim "not included in the proceedings before the Claims Commissioner" but is limited to raising the legal theories that were raised before the Claims Commissioner. Id., 251. A claim is sufficiently raised before the Claims Commissioner if the allegations before the Claims Commissioner "would support the elements of [the] distinct [cause] of action." Id. Under this rule, it is possible that notice of a medical malpractice claim may be sufficient to provide notice to the Claims Commissioner of a possible wrongful death claim, should the plaintiff die, if that claim is premised on the same allegations of medical malpractice. It is not clear, however, if this rule applies to subsection (b) of § 4-160.

If the permission to sue granted in this case did not encompass the administratrix' wrongful death claim, she would be required to seek permission to sue anew. This brings us full circle to the question of whether the wrongful death claim is a claim "alleging malpractice against the state, a state hospital or against a . . . licensed health care provider employed by the state"; General Statutes § 4-160 (b); thereby requiring that the Claims Commissioner grant permission to sue if the administratrix provides a certificate of good faith, or whether wrongful death is something different that instead invokes the Claims Commissioner's discretionary authority. It is perhaps surprising that these issues previously have not arisen, but they are bound to arise at some point—either because, as in this case, the injured party receives permission to sue for medical malpractice but dies before bringing the suit, or because the injured party receives permission to sue and does bring suit for medical malpractice but dies before the case resolves.

At oral argument before this court, the defendants' counsel declined to commit to a position on whether an administratrix would have to return to the Claims Commissioner to seek authorization to sue the state for wrongful death, the original claimant having died after receiving permission to sue for medical malpractice but before putting the case into suit. It is understandable that counsel might want to hold their fire and argue in a future case that, narrowly construed, neither the legislature nor the Claims Commissioner authorized a wrongful death suit under those circumstances.

Because the legislature specifically decided as a matter of policy to permit prompt action on medical malpractice claims by curtailing the Claims Commissioner's discretion when a plaintiff provides a certificate of good faith, I believe the legislature is best suited to clarify whether permission to sue the state for medical malpractice encompasses a claim for wrongful death premised on that medical malpractice. See *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002) ("[b]ut just as the primary responsibility for formulating public policy resides in the legislature . . . so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals" (citations omitted)). In light of the limited legal guidance available on these issues, legislative guidance would avoid the consumption of judicial and other state resources required to resolve a question that is plainly one of legislative policy. A legislative solution would also avoid uncertainty and delay for litigants awaiting resolution of the estates of those who have passed.

[1] The trial court did not decide the issue, either, but did note the possibility that the Claims Commissioner's grant to the decedent of permission to sue the state under § 4-160 (b) did not authorize a wrongful death action: "[The trial court] question[ed] whether the plaintiff's characterization of this lawsuit as a wrongful death action is a proper gloss and/or is properly brought before this court when the action approved by the [Claims] [C]ommissioner was a medical malpractice claim. . . . [A] distinctly different claim not presented to the Claims Commissioner but raised 'as an afterthought' [is] barred by sovereign immunity." The trial court suggested that, if a wrongful death claim is a distinctly different claim than a medical malpractice claim, the administratrix would be required to go back to the Claims Commissioner to get permission to sue. But, if the wrongful death claim was not distinctly different because the underlying malpractice was in fact before the Claims Commissioner, then the court's determination regarding the statute of limitations controlled the outcome of the case.

[2] Notably, the legislature in 2019 amended § 4-160 (b) to provide in addition: "In lieu of filing a notice of claim pursuant to section 4-147, a claimant may commence a medical malpractice action against the state prior to the expiration of the limitation period set forth in section 4-148 and authorization for such action against the state shall be deemed granted. Any such action shall be limited to medical malpractice claims only and any such action shall be deemed a suit otherwise authorized by law in accordance with subsection (a) of section 4-142." Public Acts 2019, No. 19-182, § 4. This amendment was not intended to—and did not—clarify the issues this concurring opinion identifies. In fact, the amendment sets up the possibly odd scenario in which a plaintiff bypasses the Claims Commissioner and brings an action in court by filing a good faith certificate in support of a medical malpractice action, and, upon the plaintiff's death as an alleged result of that malpractice, the administratrix would have to go the Claims Commissioner for permission to sue.

[3] "Specifically, the defendants argue[d] that in alleging that [the defendant urologist] 'dissected and ligated . . . vascular structures, thereby . . . severing blood flow to [the plaintiff patient's] left testicle,' the 'vascular structure' to which the plaintiffs must have been referring in their notice of claim was the testicular artery because the only 'vascular structure' that could have resulted in a lack of blood flow to the testicle was the testicular artery. The defendants then reasoned that, because the plaintiffs' theory of liability presented at trial was that [the defendant urologist] dissected and ligated a vein, not the testicular artery, and injured the nearby testicular artery in turn by unintentionally cauterizing it, the plaintiffs did not obtain a waiver of sovereign immunity for the claim presented to the court." (Emphasis omitted; footnote omitted.) *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 500.